IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JORDAN CHASE BORGOGNONI                                         PLAINTIFF

v.                                    CIVIL ACTION NO. 2:13-CV-241-KS-MTP

CITY OF HATTIESBURG, MISSISSIPPI et al.                      DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Motion to Exclude Defendants' Proposed Police

Expert, Mark Dunston, Pursuant to Daubert ("Motion to Exclude Defendants' Police Expert") [227]

and Motion to Exclude Defendants' Experts Jamie R. Williams, Ph.D., and Richard E. Clatterbuck,

M.D. ("Motion to Exclude Plaintiff's Medical Experts") [229] filed by Plaintiff Jordan Chase

Borgognoni, and the Motion to Exclude Plaintiff's Proposed Police Experts, Ronald Crew and John

Tisdale, Pursuant to Daubert ("Motion to Exclude Plaintiff's Police Experts") [221] and Motion to

Exclude Plaintiff's Experts Michael D. Freeman and David C. Lee ("Motion to Exclude Plaintiff's

Experts") [231] filed by Defendants City of Hattiesburg, Mississippi, Officer Tyson Fairley, Officer

Chad Harrison, and Lieutenant Chris Johnson.  After reviewing the submissions of the parties, the

record, and the applicable law, the Court finds the following:

1)      the Motion to Exclude Plaintiff's Police Experts [221] should be granted in part and

        denied in part;

2)       the  Motion to Exclude Defendants' Police Expert [227] should be granted in part

        and denied in part;

3)      the  Motion to Exclude Defendants' Medical Experts [229] should be denied in part

        and deferred in part; and

4)      the Motion to Exclude Plaintiff's Medical Experts [231] should be denied.

## I.  BACKGROUND

Plaintiff Jordan Chase Borgognoni ("Plaintiff") brings this action against Defendants City of Hattiesburg, Mississippi (the "City"), Officer Chad Harrison, individually and in his official capacity ("Officer Harrison"), Officer Tyson Fairley, individually and in his official capacity ("Officer Fairley"), and Lieutenant Chris Johnson, individually and in his official capacity ("Lieutenant Johnson") (collectively "Defendants").  Pursuant to the Court's Order [110] on March 31, 2015, the following claims remain pending in this case: (1)  Plaintiff's federal claims against the City, Officer Harrison in his individual capacity, Officer Fairley in his individual capacity, and Lieutenant Johnson in his individual capacity, under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments; and (2) Plaintiff's state claims of assault and battery, conspiracy, reckless disregard, intentional infliction of emotional distress, vicarious liability-respondeat superior, agency, and the tort of outrage against the City, Officer Harrison, Officer Fairley, and Lieutenant Johnson.

This case is centered around an incident occurring in the late night hours of June 22, 2012, and the early morning hours of June 23, 2012.  Officers Harrison and Fairley were dispatched to Plaintiff's apartment complex following a 911 call of a disturbance.  Though the events of that night are mostly in dispute, at some point, Plaintiff was arrested.  Plaintiff claims that Officers Harrison and Fairley used excessive force against him, causing him to become injured.  The use of force is disputed, but it is undisputed that Plaintiff was injured.  The officers then proceeded to take Plaintiff to the jail, where he was subsequently sent to the Forrest General Hospital.  As a result of his injuries, Plaintiff has been paralyzed.

Both Plaintiff and Defendants have designated experts to testify as to the procedures used during Plaintiff's arrest and as to the possible causes of Plaintiff's injuries.  Both sides have filed

motions to exclude the other's experts, which the Court now addresses.

## II.  DISCUSSION

All of the motions before the Court challenge the admissibility of expert testimony and opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993).

The admissibility of expert testimony is governed by F.R.E. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has explained that this rule places the district court into a gatekeeping role in order to ensure that scientific evidence is both reliable and relevant.  *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 597, 113 S. Ct. 2786).  As explained by the Fifth Circuit,

> This role requires the district judge to undertake a two-part analysis.  The district judge must first determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.  Second, the district judge must determine whether that reasoning or methodology can be properly applied to the facts in issue; that is, whether it is relevant.

*Id.* (citing *Daubert*, 509 U.S. at 592-93, 113 S. Ct. 2786).

### A.    Motion to Exclude Plaintiff's Police Experts [221]

Defendants make two arguments regarding the Plaintiff's police experts John Tisdale and

Ronald Crew.  First, they argue that their opinions are inadmissible legal conclusions.  Second, they argue that the supplemental report of Crew is untimely and should be excluded, as it was submitted after the expert deadline of September 28, 2015.

### 1.    Legal Conclusions

Although Federal Rule of Evidence 701(a) does permit expert opinion testimony to embrace an ultimate issue, it "does not allow a witness to give legal conclusions."  *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999) (citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)).  "Reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion."  *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (citations omitted).  "[T]he ultimate determination of Fourth Amendment objective reasonableness is a question of law."  *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (quoting *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998)) (alteration in original).

Both Tisdale and Crew's reports give opinions as to the reasonableness of the force used by the officers.  (*See* Tisdale Report [221-5] at pp. 11-13; Crew Report [221-3] at pp. 20-21.)  These opinions are inadmissible legal conclusions that must be excluded.  These opinions must also be excluded because they are not relevant under F.R.E. 702.  This testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The issue of reasonableness is not a question of fact for the trier of fact to decide, but a question of law to be ruled on by the Court.  Therefore, the portions of the reports dealing with these opinions and any testimony related to them will be excluded as inadmissible evidence.  However, as there are portions of the reports that do not deal with these inadmissible legal conclusions, those portions will not be excluded.

### 2.    Timeliness of Crew's Supplemental Report

4

This Court has previously held that if a supplemental report is "comprised of new, previously undisclosed opinions," then it is due on the expert designations deadline, but if it "is truly a supplement," it is due by the discovery deadline. *Elliot v. Amadas Indus., Inc.*, 796 F.Supp.2d 796, 802 (S.D. Miss. 2011). Crew's Supplemental Report [221-4] was served on the last day of discovery. Therefore, if it is a true supplement, it is timely.

In Crew's original report, he states

The officers all testified they had training in and were aware of departmental policies and procedures in place to govern such situations. Yet they chose to ignore the written policies.

They chose instead to follow a practice within the department of not obtaining medical attention unless there was visible evidence of injury, or a situation such as an accident where injury was probable.

(Crew Report [221-3] at p. 23.) Crew's Supplemental Report [221-4] seeks to expound upon this opinion using testimony and evidence concerning the policies and practices of the Hattiesburg Police Department that became available during discovery and after the expert designation deadline. Therefore, the Court does not find that new, previously undisclosed opinions were presented in the report, but that it is a true supplement. It is therefore timely and will not be excluded.

Defendants' Motion to Exclude Plaintiff's Police Experts [221] will therefore be **granted in part** and **denied in part**. It is **granted** in that the Court will exclude the portions of the reports speaking to the reasonableness of the force and any testimony relating to such opinions. It is **denied** in that the remaining portions of the reports and related testimony will not be excluded.

### B.    Motion to Exclude Defendants' Police Expert [227]

Plaintiff makes three arguments in his Motion to Exclude Defendants' Police Expert [227]. First, he argues that the opinions in the report are unreliable because they are based on an inaccurate factual basis. Second, he contends that the opinions pertaining to false arrest are irrelevant, as there

5

is no claim of false arrest before the Court.  Finally, he argues that the opinions in the report are inadmissible legal conclusions.

### 1.     Factual Basis

Plaintiff points to four specific facts relied upon by Defendants' police expert, Mark Dunston, that he claims do not exist in the record:  (1) that he assaulted his mother; (2) that he crashed his vehicle into a culvert; (3) that he refused to walk after being handcuffed; and (4) that he alleges he was stomped by police.

There is evidence in the record that Plaintiff assaulted his mother.  The MS Uniform Offense Report [237-2] concerning the incident, which filled out by Officer Harrison, states that there was a reported incident of "domestic violence simple assault."  This report also lists Cindy Borgognoni, the Plaintiff's mother, as the victim.  The Court therefore cannot conclude that there is no basis for this fact in the record.

There is also ample evidence in the record that Plaintiff crashed his car into an embankment, which Plaintiff does not challenge.  Instead, Plaintiff's objection apparently stems from Dunston's use of the word "culvert" instead of "embankment."  Plaintiff argues that the term "culvert" is misleading and implies a serious accident.  This is a semantic issue which is best left for cross-examination and which will not be the basis for excluding Dunston's testimony or report.

The fact that Plaintiff did not walk of his own accord after being handcuff is also in the record.  Officer Harrison and Officer Fairley testified at their depositions that, after Plaintiff was handcuffed, they "forcefully [had] to try to make him walk" and that he was "jump[ing] at [them], jumping around, lurching forward, kicking [them], . . . [and] attempting to head-butt [them]." (Harrison Depo. [237-4] at p. 118:4-5; Fairley Depo. [237-10] at p. 11:6-10.)  Because this can fairly be construed as refusing to walk, the Court cannot find there is no basis in the record for this

6

asserted fact.

Finally, Plaintiff argues that there is no basis for the fact that he is alleging that he was "stomped" by the police officers. Rather, Plaintiff argues that there is only testimony in the record that he was "kicked." The exact quote in the report states, "The plaintiff claims the officers pushed the plaintiff to the ground and stomped and kicked the plaintiff." (Dunston Report [237-1] at p. 3.) Plaintiff contends that, "[a]lthough Defendants may want to quibble over semantics here, those two words convey two different actions." (Plaintiff Rebuttal [250] at p. 2.) Though Plaintiff is correct, the Court does not believe excluding Dunston's report or his testimony is warranted on this basis alone. As stated above, such a semantic dispute is best resolved during cross-examination.

### 2.    False Arrest

All parties agree that there is no claim for false arrest asserted against Defendants. As such, any opinion in Dunston's Report [237-1] explicitly addressing the false arrest claim is not relevant to any issue the trier of fact must decide. This portion of the report is therefore inadmissible under F.R.E. 702 and must be excluded.

### 3.    Legal Conclusions

Plaintiff claims that the following inadmissible legal conclusions are contained in Dunston's Report [237-1]: "(1) the officers investigation was consistent with the generally accepted practices and training of the law enforcement profession; (2) that the proper escort position allows falls; (3) that it is reasonable for officers to assume a prisoner is faking an injury; (4) that the decision to not call an ambulance and instead to transport Plaintiff to the jail was reasonable; (5) that this entire event was an isolated event; and (6) that the opinions of Plaintiff's expert Crew and Tisdale are not reasonable." (Plaintiff Memo. in Support [228] at pp. 4-5.) As noted above, reasonableness is a question of law, and opinions going towards the reasonableness of Defendants' actions would be

7

inadmissible legal conclusions.  *See Williams*, 343 F.3d at 435.  However, having reviewed Dunston's Report [237-1], the Court cannot find one instance where he opines as to the reasonableness of the officers' actions.  The other conclusions Plaintiff calls "legal conclusions" appear to be proper expert opinions as to the practices of law enforcement, which is the field in which Dunston has been put forward as an expert.  Plaintiff gives no further argument as to why these opinions are "legal conclusions," other than to summarily call them such.  Because the Court does not find that Defendants' expert has advanced any legal conclusions, his testimony and report will not be excluded.

Plaintiff's Motion to Exclude Defendants' Police Expert [227] will therefore be **granted in part** and **denied in part**.  It is **granted** in that the Court will exclude the portion of the report discussing the legality of the arrest and any related testimony.  It is **denied** in that all other portions of the report and related testimony will not be excluded.

### C.     Motion to Exclude Defendants' Medical Experts [229]

Plaintiff argues that the reports and testimony of Defendants' medical experts, Dr. Jamie R. Williams and Dr. Richard E. Clatterbuck, should be excluded.  The Court will address Plaintiff's arguments against each expert in turn.

#### 1.     Dr. Richard E. Clatterbuck

The only portion of Dr. Clatterbuck's report that Defendants argue should be excluded is the section dealing with possible pre-existing injuries, which states

> Additionally, Mr. Borgognoni had several additional events that may have caused lesser cervical spine injuries that may have predisposed him to a more significant injury, including the motor vehicle accident that immediately preceded the events surrounding the fall on or about July 23, 2012.  Mr. Borgognoni was also involved in a motor vehicle accident on or about March 13, 2012 [sic] where he purportedly left the road and hit a mailbox which came through the windshield and struck him in the head with sufficient force to result in a laceration requiring repair.

8

(Clatterbuck Report [229-2] at pp. 1-2.)  Plaintiff asks for this portion of the report to be excluded because it is speculation on Dr. Clatterbuck's part and is not based on facts in the record.  However, Plaintiff does not dispute that these two motor vehicle accidents occurred, only that Dr. Clatterbuck has no way of knowing whether he sustained "lesser cervical spine injuries" during one or both of these accidents.

In his report, Dr. Clatterbuck does not assert that these prior injuries existed, only that they *may* have existed, based on the undisputed fact that Plaintiff was involved in these motor vehicle accidents.  While the factual basis for the assertion may be weak, the Court finds that this is an issue best addressed during cross-examination and will not exclude Dr. Clatterbuck's report or testimony on this basis.

### 2.    Dr. Jamie R. Williams

Plaintiff makes three arguments for the exclusion of Dr. Williams' report and testimony.  First, he reiterates his argument against Dr. Clatterbuck's report, quoted by Dr. Williams, and argues that this opinion is not based in fact.  Second, he argues that Dr. Williams' opinion is unsupported by testimony and has no scientific basis.  Finally, he argues that Dr. Williams' report is based on a misreading of Plaintiff's medical expert's report and is contradicted by Dr. Clatterbuck's report.

The Court finds that it is in need of further inquiry into Dr. Williams' scientific reasoning and the factual basis on which she bases her report.  Therefore, a ruling on whether to exclude her as an expert in this case will be **deferred** until a hearing is held to address Plaintiff's arguments.

Plaintiff's Motion to Exclude Defendants' Medical Experts [229] is therefore **denied in part** and **deferred in part**.  It is **denied** as to the exclusion of Dr. Richard E. Clatterbuck.  It is **deferred** until a hearing on the exclusion of Dr. Jamie R. Williams can be conducted.

### D.    Motion to Exclude Plaintiff's Medical Experts [231]

In their Motion to Exclude Plaintiff's Medical Experts [231], Defendants argue that, because they rely on significantly similar methodologies, Plaintiff's experts are subject to exclusion on the same grounds as Defendants' experts. However, in his Motion to Exclude Defendants' Medical Experts [229], Plaintiff argues that specific problems exist with regard to Dr. Williams' and Dr. Clatterbuck's reports. Defendants have not detailed similar specific problems with Plaintiff's medical experts. Therefore, the Court will **deny** their Motion to Exclude Plaintiff's Medical Experts [231].

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Motion to Exclude Plaintiff's Police Experts [221] will therefore be **granted in part** and **denied in part**. It is **granted** in that the Court will exclude the portions of the reports speaking to the reasonableness of the force and any testimony relating to such opinions. It is **denied** in that the remaining portions of the reports and related testimony will not be excluded.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion to Exclude Defendants' Police Expert [227] will therefore be **granted in part** and **denied in part**. It is **granted** in that the Court will exclude the portion of the report discussing the legality of the arrest and any related testimony. It is **denied** in that all other portions of the report and related testimony will not be excluded.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion to Exclude Defendants' Medical Experts [229] is therefore **denied in part** and **deferred in part**. It is **denied** as to the exclusion of Dr. Richard E. Clatterbuck. It is **deferred** until a hearing on the exclusion of Dr. Jamie R. Williams can be conducted.

IT IS FURTHER ORDERED AND ADJUDGED that Defendants' Motion to Exclude

10

Plaintiff's Medical Experts [231] is **denied**.

SO ORDERED AND ADJUDGED this the 24th day of May, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE